**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:22-cr-00042-DCR-MAS-1 |
| v. ) | |
| ) | |
| EYRON J. SMITH, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION AND ORDER**

The Indictment alleges that Defendant Eyron Smith ("Smith") possessed with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1), and possessed a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [DE 1]. The United States orally sought detention per 18 U.S.C. §§ 3142(f)(1)(C) and (E), and the Court conducted a detention hearing on May 6, 2022. [DE 9, 14]. The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion and as stated on the hearing record, the Court grants the Government's motion for detention.

**I.     BRA FRAMEWORK**

Based on the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United*

1

*States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y],"

the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.[1]

---

[1] The subsection directs the Court to balance the following:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

## II.     ANALYSIS

As the Court's ruling and discussion on the record reflects, Smith rebutted the presumption as to flight or nonappearance risk, and the Government did not demonstrate by a preponderance of the evidence that no conditions could reasonably assure that Smith would not flee and that he would appear for future proceedings in this case. However, Smith failed to rebut the presumption as to danger risk and, in any event, the United States showed by clear and convincing evidence that no conditions can reasonably mitigate that risk and assure community safety. Accordingly, the Court finds that Smith's detention is required under the BRA based on danger risk.

### A.     FLIGHT OR NONAPPEARANCE RISK

To rebut the presumption, Smith emphasized that despite his lengthy criminal record, he has not failed to appear for court in the past, as confirmed by the record. [Pretrial Services Report ("PSR") at 3-8]. He also proffered that he would be permitted to reside with his child's mother, Alexis Spence, at their shared residence in Nicholasville, Kentucky, where they have lived for the past five years with their child and Ms. Spence's other children. Finally, Smith noted that he was cooperative with police during his arrest in this matter and maintained that he would be willing to comply with location monitoring and home detention conditions. The Court finds this information sufficient to rebut the presumption that no conditions could reasonably assure Smith's appearance at proceedings in this case.

Although the rebutted nonappearance presumption persists as a consideration, the Government has not shown in response that it is more likely than not that no conditions could secure Smith's presence, based on the balance of BRA factors. Favoring detention based on nonappearance risk are Smith's substance use disorder history, his inconsistent employment background, and the steep penalties he faces if convicted in this case. However, because Smith's

community ties are strong enough to guard against flight and his record indicates that he does appear for court proceedings, the Court is not persuaded that it could not reasonably assure his appearance with home detention, drug testing, and electronic monitoring conditions.

The Court first considers the nature and circumstances of the alleged offenses (aggravated fentanyl trafficking and unlawful possession of a firearm). 18 U.S.C. § 3142(g)(1). Though the charged offenses are exceptionally dangerous as discussed in the following section, there are no particular flight or nonappearance markers, aside from the rebutted presumption and the potential penalties. Defendant proffered that he was cooperative during his arrest in this case, and the Government did not argue otherwise. This factor thus weighs only slightly in favor of detention.

Next the Court considers the weight of evidence that Defendant is a risk of flight or nonappearance. 18 U.S.C. § 3142(g)(2); *see United States v. Sykes*, No. 04-cr-80623, 453 F. Supp. 3d 1011, 1015–16 (E.D. Mich. Apr. 13, 2020) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)) (noting that, in this Circuit, the § 3142(g)(2) factor looks only to the weight of the evidence that the defendant is a flight risk or a danger); *accord United States v. Sanders*, 466 F. Supp. 3d 779, 785 (E.D. Mich. 2020). The salient flight or nonappearance evidence on this record stems from Defendant's substance use disorder history, his lack of steady employment, his prior fleeing and evading convictions, and his history of generally violating conditions of release. Defendant self-reported to the USPO that he had previously regularly used multiple controlled substances, including marijuana, cocaine, and prescription opiates, though he denied such use in the roughly 7 months preceding his federal arrest. [PSR at 3]. The PSR also reflects relatively inconsistent employment during Smith's adult life. [*Id.* at 2]. Additionally, the PSR reflects a history of probation and other conditional release violations, as well as multiple prior convictions

5

for fleeing or evading authorities at the time of arrest. [*Id.* at 3-8]. There is thus some weight of flight and/or nonappearance evidence.

Consideration of the third and final flight factor tracks similar concerns as well as mitigators. 18 U.S.C. § 3142(g)(3)(A) (considering a defendant's family and community ties, employment, past conduct and substance use, criminal history, and record concerning appearance at court proceedings). Smith's family here and his overall record concerning court appearances weigh in his favor, while his substance use, lack of employment, and criminal history weigh against him. The fact that Smith allegedly committed the instant offenses while on conditional release for controlled substance offenses is further aggravating in terms of detention, though it is more relevant to the issue of danger than to flight or nonappearance. *Id.* § 3142(g)(3)(B). Regardless, collectively, the second and third BRA factors do provide some flight and nonappearance indicators on this record.

However, despite this evidence of flight and/or nonappearance risk, the Court finds that the relevant concerns can be adequately addressed with specific conditions. Defendant's ties to the local community and his family here reassure the Court that he will not seek to flee. Nor does Smith have any international connections, a passport, or a history of travel. The Court therefore views continued residence with Spence and the children as a sufficient anchor and guarantee that he would remain available during the pendency of this case. Home detention and GPS monitoring could ensure that Smith's location is continuously known to supervising officers and that he remains at Spence's home at all times except for approved activities. Despite Smith's apparent history of fleeing and evading at the time of other arrests, he did not do so in this case, and his lengthy criminal record demonstrates that he does in fact typically appear for court proceedings once a prosecution has been instituted. The Court could further reasonably address the substance

use and employment issues with drug testing and/or treatment conditions and a requirement that Smith obtain and maintain legitimate employment.

For these reasons, the Court finds that the available conditions would reasonably assure that Smith would not flee and that he would appear in this case. *See United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (emphasizing that the BRA "does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight"). The United States has not shown otherwise by a preponderance of the evidence. The Court thus concludes that pretrial detention is not warranted based on flight or nonappearance risk. However, for the reasons discussed below and as held on the record, pretrial detention is warranted in this case based on persisting danger risk.

**B.    DANGER RISK**

Although Defendant likewise cited his ability to reside with Spence and the availability of home detention and locational monitoring conditions, the Court determined that this information alone did not sufficiently rebut the presumption as it applies to danger risk in this case. First, the Court observes that Spence's residence was apparently the location of at least some of Defendant's alleged drug trafficking activities in this case, despite the presence of minors residing there, severely discounting its value in assuaging any continuing danger concerns. Moreover, the extent and scale of prior drug trafficking activity in Defendant's background, coupled with the instant allegations, illustrates serious risk that Defendant would simply return to such conduct if released. *See, e.g., United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged participation in a conspiracy to distribute "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that

7

defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases); *see also United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) (emphasizing that "the danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community").

Consequently, the Court found that Smith had not produced sufficiently probative, credible evidence to rebut the danger presumption, despite the relatively low bar, and finds that it requires detention in this case. See Hernandez, 2002 WL 1377911, at *2; Stone, 608 F.3d at 945. Independently and alternatively, the Court finds that, even if Smith had rebutted the presumption in this context, the United States has shown by clear and convincing evidence that no conditions can reasonably assure community safety.

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance, [or] firearm[.]" 18 U.S.C. § 3142(g)(1). The alleged offenses feature a volatile mix of fentanyl distribution and unlawfully possessed firearms. Given the applicable presumption (which remains a pro-detention consideration, even if rebutted), the BRA manifestly signals Congressional belief in the inherent, exceptional dangerousness of the at-issue offenses. *See United States v. Bucio*, No. CR 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (recognizing that "the nature and circumstances of the offense in issue weigh[ed] in favor of" detention where "they ar[o]se in the context of a large drug trafficking scheme"); *United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018) (finding that the drug and gun offenses charged were "undeniably serious" and observing that "the combination of the distribution of drugs and the illegal possession" of firearms presented a serious danger to the community). This factor strongly favors detention based on danger risk.

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. There is significant risk in this case that Defendant would continue to engage in drug-related conduct if released pretrial based on the present allegations, Smith's history of similar and other criminal conduct, his past violations of court-imposed conditions, and the proposed return to Spence's residence that has previously been connected to the alleged trafficking activities. *See*, *e.g.*, *Stone*, 608 F.3d at 947 n.6 ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."); *Pina-Aboite*, 97 F. App'x at 836.

At the detention hearing, ATF Agent John Morgan ("Agent Morgan") testified about the investigation into Smith in this case. [DE 15]. In October 2021, a confidential informant ("CI") began arranging and completing controlled narcotics purchases with Defendant. [Hearing Recording at 03:30-07:00]. A state search warrant was executed in November 2021 at Spence's apartment, which Smith had been identified leaving during one of the controlled purchase scenarios. Only digital scales were located at the residence, however, and it is not clear on this record that they were related to drug trafficking. Nonetheless, fentanyl and loaded firearms were discovered in Defendant's vehicle during a roughly contemporaneous search. Spence admitted that she knew Defendant had firearms though he did not store them at her residence. Smith conceded that he carried firearms for protection due to fear surrounding a prior conviction for complicity to reckless homicide. [See PSR at 4]. Agent Morgan further testified that local law enforcement was familiar with Smith at the time of the instant investigation because of prior gang affiliations and a history of drug trafficking in this area. [Hearing Recording at 07:30].

Additionally, the individuals found with Defendant at his apprehension were known to be convicted felons. [Id. at 08:30].

Smith's criminal history further heightens the risk that he will continue to traffic in narcotics if released and illustrates the danger that can result if he does so. Within approximately the past decade, while Defendant has been an adult, he has consistently engaged in criminal activity and has accumulated many serious convictions, including weapons and drug offenses. [PSR at 3-8]. Between 2014 and 2016 specifically, Defendant was convicted of complicity to reckless homicide, possession and distribution of various controlled substances, fleeing police, wanton endangerment, and carrying a concealed deadly weapon. [Id. at 4-5]. Despite receiving significant penalties for these offenses, by 2018, Defendant was again committing drug offenses. [Id. at 6-7]. Finally, in addition to pending state charges apparently related to the instant federal offense, Smith has pending charges in Fayette Circuit Court for receiving a stolen firearm and possessing a firearm as a convicted felon, stemming from an October 2020 arrest. [Id. at 7]. It also appears that Smith was on post-conviction supervision in relation to two different drug (cocaine) possession cases, as well as pretrial release for the pending weapons charges, at the time he allegedly committed the instant federal offenses.

Together, this information gives the Court little confidence that conditions will deter Smith from continuing criminal activity and, moreover, highlights the dangerousness of the drug and gun conduct in which Smith has engaged in the past. As Smith's own criminal history confirms, pairing the two can be fatal, and Smith's background further evinces total disregard for conditions of release, whether pretrial or post-conviction. For all of these reasons and given the overlap between Defendant's criminal history and the instant alleged offenses, there is significant evidence of Defendant's dangerousness. This factor firmly favors detention.

The third BRA factor also favors detention for many of the same reasons. See 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's past conduct and criminal history). Defendant's prior substance use and his lack of steady employment also increase the risk that he will return to trafficking in narcotics if released. And Defendant's repeated violations of court-imposed conditions—namely, his repeated participation in new criminal activity while on post-conviction and pretrial release—is an explicit BRA factor that here weighs heavily in favor of detention on danger grounds. Id. § 3142(g)(3)(B) (considering "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law"). This pattern suggests that Smith simply would return to narcotics trafficking if released in this case, without regard to any conditions or potential consequences.

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The nature of the potential danger—the risk of continued trafficking in narcotics, together with the presence of firearms—is grave. See, e.g., United States v. Flowers, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" and "[t]he addition of guns to the equation only increases that danger"). This is particularly true given Defendant's overlapping criminal background and history of committing new criminal conduct while on release. Indeed, the Court can scarcely imagine a more serious danger risk than combined unlawful weapons possession and drug conduct that has itself already culminated in a homicide. Thus, for the reasons already discussed at length, this factor also favors detention.

Accordingly, all four BRA factors support pretrial detention based on danger in this case, and the Court finds that there is significant risk that Defendant would pose a danger to the

community if released.  Nor could the available conditions reasonably address that risk.  As noted, the volume and scale of Defendant's alleged fentanyl trafficking in this case and the extent of his prior, demonstrated drug activity indicate that he has entrenched illicit connections and a likely ability to continue such conduct remotely even if confined to his residence.  *See United States v. Santiago-Pagan*, 2009 WL 1106814, at *7.  Defendant's established disregard for the parameters of conditional release is not encouraging in this regard.  And, notably, there is evidence that Spence's residence, where Defendant's proposes to be released, was involved in the alleged drug trafficking activity in this case.  The Court cannot find that home detention, with or without monitoring, at Spence's residence would reasonably assure cessation of the dangerous conduct.  Pretrial detention is thus warranted because the Government has shown by clear and convincing evidence that the available conditions cannot reasonably address Defendant's danger risk and assure community safety.

### III.    CONCLUSION

For the stated reasons, the Court finds that Defendant has rebutted the presumption as to flight and/or nonappearance, and that the United States has not shown by a preponderance in response that no conditions can reasonably address those risks.  However, the Court finds that Defendant has not rebutted the presumption as to danger risk, and pretrial detention is warranted on that basis.  Independently and alternatively, the Court finds that, even if Smith had rebutted the presumption as to danger, the Government has shown by clear and convincing evidence that no conditions can reasonably protect the community from such risk.  Detention is therefore required.

Accordingly, as previously held on the record, the Court **GRANTS** the United States' oral detention motion.  Defendant shall remain in custody pending trial in this matter.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 16th day of May, 2022.

